AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original    ☐ Duplicate Original

| LODGED |
| --- |
| CLERK, U.S. DISTRICT COURT |
| 10/23/2023 |
| CENTRAL DISTRICT OF CALIFORNIA |
| BY: ___TV___ DEPUTY |

# UNITED STATES DISTRICT COURT

for the

Central District of California

| FILED |
| --- |
| CLERK, U.S. DISTRICT COURT |
| 10/23/2023 |
| CENTRAL DISTRICT OF CALIFORNIA |
| BY: ___KL___ DEPUTY |

United States of America,

v.

BENJAMIN MENSAH,
  aka "Tovarance Pate,"
  aka "Tovarance Mensah,"
  aka "Goodgracious Jordan Joseph,"
  aka "Jayvon Jackson,"
  aka "Tovarance Jordan Mensah,"
  aka "Tovarance Vontor Pate,"
  aka "Montoria Precious Jordan,"

  Defendant.

Case No.   2:23-mj-05454

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about October 18, 2023, in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
| --- | --- |
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm and Ammunition |

This criminal complaint is based on these facts:

  *Please see attached affidavit.*

  ☒ Continued on the attached sheet.

/s/ Collin M. Murphy
Complainant's signature

Collin M. Murphy, HSI Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:   October 23, 2023

*Alicia G. Rosenberg*
Judge's signature

City and state:   Los Angeles, California

Hon. Alicia G. Rosenberg
Printed name and title

AUSAs: Declan T. Conroy

**AFFIDAVIT**

I, Collin Murphy, being duly sworn, declare and state as follows:

**INTRODUCTION**

1. I am a Special Agent ("SA") with Homeland Security Investigations ("HSI") and have been so employed since August 2020. I am currently assigned to the HSI Office of the Assistant Special Agent in Charge in El Segundo, California, as part of the Los Angeles International Airport Express Consignment and Freight Forwarding group, which is responsible for investigating drug trafficking violations involving outbound mail, air cargo, and ocean freight shipments. Prior to my employment with HSI, I was a correctional officer with the Federal Bureau of Prisons for approximately four years.

2. In 2019, I obtained my Master of Arts in Criminal Justice Management and Leadership from Sam Houston State University. In 2021, I attended and completed the Criminal Investigator Training Program and HSI Special Agent Training at the Federal Law Enforcement Training Center in Glynco, Georgia. Through my training, I have learned of HSI's criminal investigative authority, as well as investigative techniques. HSI is responsible for enforcing federal criminal statutes prohibiting, among other things, the distribution of and possession with intent to distribute drugs, in violation of Title 21 of the United States Code. During my employment with HSI, I have investigated the smuggling of drugs through air cargo into and out of the United States. I have assisted with

the execution of search warrants to seize evidence of violations of federal and state law, as well as arrest warrants to apprehend individuals who have committed such violations.

## PURPOSE OF AFFIDAVIT

3. This affidavit is made in support of a criminal complaint and arrest warrant against Benjamin MENSAH, also known as ("aka") Tovarance Pate, aka Tovarance Mensah, aka Goodgracious Jordan Joseph, aka Jayvon Jackson, aka Tovarance Jordan Mensah, aka Tovarance Vontor Pate, aka Montoria Precious Jordan, aka Tovarance Jordan B. Mensah ("MENSAH"), for a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm and Ammunition.

4. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only, all amounts or sums are approximate, and all dates and times are on or about those indicated.

## SUMMARY OF PROBABLE CAUSE

5. On October 18, 2023, Los Angeles Police Department ("LAPD") officers received a radio call regarding a man with a gun at 5915 Jumilla Avenue (the "Jumilla Avenue Residence").

While on scene, officers learned from MENSAH's housemate, S.H., that MENSAH had demanded that S.H. have sex with him, and had threatened to kill S.H. the previous evening and that morning. After MENSAH refused to leave the Jumilla Avenue Residence and threatened to "shoot" LAPD officers if they entered the Jumilla Avenue Residence, the LAPD Special Weapons and Tactics ("SWAT") team deployed to the Jumilla Avenue Residence.  MENSAH then surrendered.

6. Later that day, a state search warrant was issued for the Jumilla Avenue Residence -- at which MENSAH and S.H. are the sole residents -- authorizing officers to search for firearms and ammunition, based on (i) the events of that day, and (ii) the fact that MENSAH had a prior felony conviction, and was therefore prohibited from owning or possessing a firearm or ammunition pursuant to California Penal Code Section 29800. While executing that search warrant, law enforcement officers found, among other things, a shotgun, an AR-15 style firearm, and an extended magazine containing 22 rounds of ammunition.

7. As discussed below, MENSAH has a criminal history that includes multiple felony convictions and is therefore prohibited from possessing firearms and ammunition.

## STATEMENT OF PROBABLE CAUSE

8. Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

### A. LAPD Officers Respond to the Jumilla Avenue Residence on October 18, 2023, and Learn from S.H. that MENSAH Made Repeated Threats to Kill Her and Her Boyfriend

9. Based on my review of law enforcement reports and conversations with other law enforcement officers, I understand that, on October 18, 2023, at approximately 9:10 a.m., LAPD officers Emanuel Barbu and Ivan Sanchez, who were working Topanga Patrol, received a radio call regarding a man with a gun at 5915 Jumilla Avenue.

10. Upon arriving at the Jumilla Avenue Residence, the officers were met by an individual, later identified as MENSAH, in the front yard with three large dogs. The officers asked MENSAH if he would step outside the yard and speak with them, but MENSAH refused.

11. When the officers asked MENSAH if there was anyone else inside the house, MENSAH walked into the Jumilla Avenue Residence and told a woman, S.H., to come outside and meet with police. S.H. walked out into the front yard and, when the officers asked S.H. if she needed help, she nodded to indicate "yes." The officers then asked S.H. to exit the yard so they could speak with her.

12. After exiting the yard, S.H. informed a different responding officer, officer Jose Avila, that MENSAH had woken her up by pushing on her bed, and expressed that he wanted to have sex with S.H. When S.H. refused, MENSAH told S.H. he was "going to hurt" her.

13. After relocating S.H. to the command post, S.H. informed LAPD Detective Victor Alvarez of the following additional information:

    a. S.H. had been living with MENSAH at the Jumilla Avenue Residence since February 2023. S.H. explained that she was MENSAH's sole housemate, and stated that she was not in a romantic relationship with MENSAH.

    b. On October 17, 2023, S.H.'s ex-boyfriend came to the Jumilla Avenue Residence. S.H.'s ex-boyfriend attempted to contact S.H. by calling her phone, but S.H. did not answer, as MENSAH had taken S.H.'s phone from her in the past. S.H. then observed from inside as MENSAH met S.H.'s ex-boyfriend at the front gate and spoke with him. S.H.'s ex-boyfriend left after this exchange.

    c. Upon returning inside, MENSAH told S.H. that he was going to file harassment charges against S.H.'s ex-boyfriend for coming to the Jumilla Avenue Residence and looking for S.H., and demanded that S.H. speak with law enforcement authorities and file a complaint against her ex-boyfriend. When S.H. refused, MENSAH threatened to send people to the Jumilla Avenue Residence to ensure that S.H. could not leave. MENSAH then left the Jumilla Avenue Residence.

    d. When MENSAH returned approximately two hours later, he continued to yell at S.H., and told her that if she did not do exactly as he said, MENSAH would file charges against S.H. That night, MENSAH repeatedly entered S.H.'s bedroom without permission. During one of these intrusions, MENSAH told

S.H. that she was going to end up in a ditch, and that he was going to kill her. At this point, S.H. reported that she feared for her safety.

      e.    The next morning, at approximately 6:00 a.m., MENSAH walked into S.H.'s bedroom without permission, and told S.H. that if she did not have sex with him, he was going to sue and hurt her. At this time, MENSAH also threatened to kill S.H.'s ex-boyfriend.

      f.    After making this threat against S.H.'s ex-boyfriend, MENSAH began to scream and hit S.H.'s bed. MENSAH then told S.H., "I will murder you and get away with it." S.H. reports that, during this time, she believed that MENSAH would hurt or rape her.

      g.    To escape MENSAH, S.H. locked herself in a bathroom and messaged her ex-boyfriend, expressing to him that she feared for her safety. While sending these messages, S.H. stated that she heard a clipping noise, which she believed to be MENSAH putting ammunition into a gun.

      h.    S.H. continued to hide from MENSAH in the locked bathroom. Eventually, however, MENSAH forced his way into the bathroom. S.H. pleaded with MENSAH to get out, but he refused.

      i.    At this time, while trapped by MENSAH in the bathroom, MENSAH's dogs began barking. MENSAH then exited the bathroom, and then came back to let S.H. know that the police had arrived.

    **B.**    **MENSAH Barricades Himself at the Jumilla Avenue Residence, Threatens to Shoot LAPD Officers, and Is Eventually Taken into Custody by LAPD SWAT for Criminal Threats**

14. While officer Avila spoke with S.H. regarding the above-described events of the prior two days, other responding officers repeatedly asked MENSAH to come outside of the Jumilla Avenue Residence, and to put his dogs inside the Jumilla Avenue Residence, but MENSAH repeatedly refused.

15. As LAPD officers continued to try to convince MENSAH to come outside of the Jumilla Avenue Residence, LAPD Officer Angel Saldivar, who was standing by the front sliding gate, heard MENSAH yell "if you guys come into my house, I'm going to shoot you."

16. In light of this warning and MENSAH's refusal to leave, an LAPD SWAT team deployed to the Jumilla Avenue Residence.  MENSAH later surrendered to LAPD SWAT.

17. After being taken into custody by LAPD SWAT, LAPD officers arrested and booked MENSAH for a violation of Section 422(a) of California Penal Code (Criminal Threats).

    **C.**    **A State Search Warrant of the Jumilla Avenue Residence Reveals Firearms and Narcotics**

18. Later that day, the Honorable Melvin D. Sandvig, Magistrate Judge for the Superior Court of California, County of Los Angeles, signed a search warrant for the Jumilla Avenue Residence authorizing officers to search the Jumilla Avenue Residence for any firearms and magazines, based on (i) the events of that day, and (ii) the fact that MENSAH had two prior felony convictions, and is therefore prohibited from owning or

possessing a firearm or ammunition pursuant to California Penal Code Section 29800.

19. Based on my review of law enforcement reports and conversations with other law enforcement officers, I understand that, I understand that, later that day, enforcement officers executed a search of the Jumilla Avenue Residence. During this search, law enforcement officers found, among other things:

    a. a Tokarev model 12FDE 12-guage shotgun, with a removed serial number, in a blue plastic container in the garage;

    b. an AR-15 firearm, with no serial number, under a mattress in S.H.'s bedroom;

    c. an extended magazine containing 22 rounds of Blazer 9mm Luger caliber ammunition, on top of a wine bar counter; and

    d. one round of Remington Peters 12-guage ammunition, inside a green suitcase located inside the garage.

**D.   MENSAH Is a Convicted Felon**

20. I have reviewed MENSAH's criminal history records and learned that he has previously been convicted of the following felony crimes punishable by a term of imprisonment exceeding one year:

    a. On or about October 7, 2009, MENSAH was convicted of a violation of Georgia Code Section 16-11-37, Terroristic Threats, in the Superior Court of Gwinnett County, State of Georgia, Case Number 04-B-2290-8; and

   b. On or about October 7, 2009, MENSAH was convicted of a violation of Georgia Code Section 16-10-51, Bail Jumping, in the Superior Court of Gwinnett County, State of Georgia, Case Number 09-B-0783-8.

  **E.** **Interstate Nexus**

  21. On October 20, 2023, ATF Special Agent David Gonzalez examined photographs of the shotgun and ammunition seized from MENSAH.  SA Gonzalez concluded that (i) the Tokarev model 12FDE 12-guage shotgun was manufactured in the country of Turkey by Tokarev Arms, (ii) the 22 rounds of Blazer 9mm Luger caliber ammunition was manufactured in the state of Idaho by CCI / Speer Operations, and (iii) the Remington Peters 12-guage ammunition was manufactured in the state of Connecticut by Remington.

<strong><u>CONCLUSION</u></strong>

  22. For all of the reasons described above, there is probable cause to believe that MENSAH has committed a violation of 18 U.S.C. § 922(g)(1) (Felon in Possession of a Firearm and Ammunition).

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 23rd day of
October 2023.

_____*Alicia G. Rosenberg*_____
HONORABLE ALICIA G. ROSENBERG
UNITED STATES MAGISTRATE JUDGE